Jordan T. Smith, Esq., Bar No. 12097
JTS@pisanellibice.com
**PISANELLI BICE PLLC**
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: (702) 214-2100
Facsimile: (702) 214-2101

Kevin J. Orsini (*pro hac vice*)
korsini@cravath.com
Antony L. Ryan (*pro hac vice*)
aryan@cravath.com
Brittany L. Sukiennik (*pro hac vice*)
bsukiennik@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Counsel for Plaintiff
Robinhood Derivatives, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBINHOOD DERIVATIVES, LLC,<br><br>　　　　Plaintiff,<br><br>　　　　vs.<br><br>MIKE DREITZER, in his official capacity as Chairman of the Nevada Gaming Control Board, et al.,<br><br>　　　　Defendants. | CASE NO.: 2:25-cv-01541-APG-DJA<br><br>**PLAINTIFF ROBINHOOD'S [PROPOSED] RESPONSE TO BRIEF OF AMICI CURIAE INDIAN GAMING ASSOCIATION, ET AL.** |

Plaintiff Robinhood Derivatives, LLC ("Robinhood") respectfully submits this proposed response to the proposed brief of Amici Curiae Indian Gaming Association et al.[1] (ECF No. 32 (the "Tribal Amici Brief").) Robinhood did not object to the filing of the Tribal Amici Brief. If the Court grants Tribal Amici's motion and considers their proposed brief, Robinhood respectfully requests that the Court consider the following points in response, which respond to issues that Robinhood does not address in its Reply Memorandum of Points and Authorities in Support of Its Motion for Preliminary Injunction ((ECF No. 47) the "Reply") or in the supplemental briefing Robinhood requested the opportunity to submit (ECF Nos. 43, 46) addressing the issues in the written ruling issued on October 14, 2025 in *North American Derivatives Exchange, Inc. v. State of Nevada ex rel. Nevada Gaming Control Board*, No. 2:25-cv-00978-APG-BNW.[2]

Simply put, the Indian law issues raised in the Tribal Amici Brief are irrelevant to the issues in this case. Neither Robinhood nor Defendants have raised Indian law issues in their claims or defenses or in their briefs. An amicus brief "ordinarily cannot inject new issues into a case which have not been presented by the parties." *Fallon Paiute-Shoshone Tribe v. U.S. Bureau of Land Mgmt.*, 455 F. Supp. 2d 1207, 1216 (D. Nev. 2006) (quoting 4 Am. Jur. 2d *Amicus Curiae* § 7 (2006)); *see also California ex rel. Becerra v. U.S. Dep't of Interior*, 381 F. Supp. 3d 1153, 1164 (N.D. Cal. 2019) (amicus briefs "should be limited to issues raised by the parties"). Accordingly, the Court should disregard the Indian law issues raised in the Tribal Amici Brief. In the event that the Court does wish to consider those Indian law issues, Robinhood provides this short response to show that they are without merit.

I.   **IGRA IS NOT RELEVANT TO THE ISSUES IN THIS ACTION**

Tribal Amici argue that the Indian Gaming Regulatory Act ("IGRA") governs Robinhood's conduct on Indian lands. (Amici Brief at 3-17.) However, IGRA is irrelevant to the issues presented in the above-captioned action. Robinhood seeks to enjoin Defendants' enforcement of Nevada

---

[1] "Tribal Amici" has the same meaning here as assigned to it by Amici. (*See* Tribal Amici Brief at 2.) Capitalized terms not defined here have the same meaning as in Robinhood's Motion for a Preliminary Injunction. (ECF No. 7.)

[2] The sections of the Amici Brief that are not addressed here are Sections I.B.2 and I.B.3.

2

1  gaming laws, which attempts in effect to regulate Robinhood's involvement in transactions
2  involving event contracts on a CFTC-designated contract market. (ECF No. 1 at 25.) The issue in
3  this action is whether Defendants' threatened enforcement of Nevada law is preempted by the CEA
4  and the CFTC's regulations. (*Id.* ¶¶ 73-79.) IGRA has no bearing on this issue because (i) IGRA
5  regulates gaming on Indian lands only, (ii) Robinhood's conduct does not take place on Indian lands
6  and therefore also is not "Class III gaming activities" under IGRA, and (iii) the Nevada gaming laws
7  that Defendants seek to enforce do not apply on Indian lands.

8      *First*, IGRA regulates the conduct of gaming activity on Indian lands only. *Michigan v.*
9  *Bay Mills Indian Cmty.*, 572 U.S. 782, 795 (2014) ("Everything—literally everything—in IGRA
10  affords tools (for either state or federal officials) to regulate gaming on Indian lands, *and nowhere*
11  *else*." (emphasis added)). Its territorial focus is evident from the language of the statute, including
12  the use of the phrase "on Indian lands" in nearly every section. 25 U.S.C. § 2701 *et seq.*

13      *Second*, Robinhood's activities are not covered by IGRA because these activities do not take
14  place "on Indian lands." Congress's concern in IGRA was the operation of gaming businesses
15  occurring on tribes' physical territory, such as casinos and bingo halls. *See, e.g.*, *id.* § 2710(b)(3)
16  (referring to revenues from gaming "conducted or licensed by any Indian tribe"). Robinhood does
17  not operate any business on any tribe's physical territory, and conduct physically occurring
18  off-reservation does not become activity "on Indian lands" when, as here, a commercial service is
19  simply accessible to tribal members over the Internet. *See Jackson v. Payday Fin., LLC*,
20  764 F.3d 765, 782 (7th Cir. 2014) (operation of an Internet website accessed by tribal members from
21  a reservation is not activity on Indian lands); *Hornell Brewing Co. v. Rosebud Sioux Tribal Court*,
22  133 F.3d 1087, 1093 (8th Cir. 1998) (same for advertising on the Internet). Robinhood's activities
23  therefore are not "Class III gaming activities" under IGRA. *See* 25 U.S.C. § 2710(d)(1) (listing
24  conditions for when "Class III gaming activities" are lawful "on Indian lands").

25      *Third*, the Nevada gaming law at issue does not apply on Indian lands. *See Chicken Ranch*
26  *Rancheria of Me-Wuk Indians v. California*, 42 F.4th 1024, 1031 (9th Cir. 2022) ("[S]tates generally
27  lack the power to regulate tribes . . . ."); *see also McClanahan v. State Tax Commission of Ariz.*,
28

411 U.S. 164, 170-71 (1973) ("State laws generally are not applicable to tribal Indians on an Indian reservation except where Congress has expressly provided that State laws shall apply.").

Robinhood's conduct takes place, and Nevada gaming laws operate, only *outside* Indian lands, while IGRA only has application *on* Indian lands.  Tribal Amici therefore address a legal regime that is irrelevant to the issues in this action.

## II.   THERE IS NO CONFLICT BETWEEN IGRA AND THE CEA.

Tribal Amici purport to identify a conflict between IGRA and the CEA, but the CEA neither "preempt[s]" nor "impliedly repeal[s]" IGRA.  (Amici Brief at 5-17.)  On the one hand, the CEA provides that the CFTC has "exclusive jurisdiction" over transactions involving event contracts, which are swaps or contracts in excluded commodities, "traded or executed on a [CFTC-designated] contract market."  7 U.S.C. § 2(a)(1)(A); (*see also* ECF No. 7 at 4-7.)  On the other hand, IGRA regulates the conduct of gaming activity on Indian lands.  *See* 25 U.S.C. § 2702(1) (declaring IGRA's purpose to be, among others, "to provide a statutory basis for the operating of gaming by Indian tribes . . . .").  IGRA generally gives tribes regulatory authority over gaming on "Indian lands," subject to a defined interaction between tribes, the states, the Secretary of the Interior, and the National Indian Gaming Commission.  But Congress's grant to the CFTC of "exclusive jurisdiction" over commodity futures and swap trading on CFTC-designated exchanges, 7 U.S.C. § 2(a)(1)(A), precludes an extension of IGRA to cover the same trading.  IGRA and the CEA can be readily harmonized because trading on CFTC-designated exchanges is subject to the CFTC's exclusive jurisdiction and therefore cannot be covered by IGRA.

Tribal Amici mention the Unlawful Internet Gaming Enforcement Act of 2006 ("UIGEA"). (Amici Brief at 4 & n.4 (quoting UIGEA's definition of "bet or wager").)  It is UIGEA, not IGRA, that controls whether online gaming that crosses state or tribal borders is unlawful where the activity is lawful in one location (where the bet is made or received) but not the other, 31 U.S.C. § 5362(10), and UIGEA expressly carves out CFTC-regulated transactions, including those at issue here, *id.* § 5362(1)(E)(ii) (defining "bet or wager" to exclude "any transaction conducted on or subject to the rules of a registered entity or exempt board of trade under the [CEA]").  With the UIGEA carveout, Congress made clear how to reconcile all three statutes (the CEA, IGRA and UIGEA) by

1  carving out CEA-regulated transactions from the federal prohibition on online gaming crossing into
2  a state or Indian lands where the gaming activity is unlawful. Interpreting IGRA to encroach on
3  event contract trading on CFTC-designated exchanges would impermissibly override the UIGEA
4  carveout.

**III.   NEITHER THE CEA NOR THE CFTC'S REGULATIONS VIOLATE THE NONDELEGATION DOCTRINE.**

*First*, Tribal Amici misunderstand Robinhood's role as an FCM and its relationship with Kalshi; they argue that the CEA's self-certification provisions "violate[] the nondelegation doctrine, which guards precisely the type of unchecked, privately exercised regulatory power that Robinhood relies on to list and trade its sports event contracts on Kalshi's exchange." (Amici Brief at 12.) Robinhood does not list or trade sports-related event contracts on Kalshi's DCM. Robinhood, as an FCM, intermediates its customers' event contract trades on Kalshi's exchange, and only Kalshi self-certifies the contracts it lists on its DCM with the CFTC. (*See* ECF No. 8 ¶¶ 3-6.)

*Second*, the CEA's self-certification provisions and the CFTC's regulations do not violate any nondelegation doctrine. (Amici Brief at 12-13.) Tribal Amici rely primarily on case law concerning the *legislative* nondelegation doctrine to argue that the CEA and CFTC's regulations violate the *private* nondelegation doctrine. (*Id.*) Regardless, both doctrines are irrelevant here. The CEA's self-certification provisions involve no delegation to the CFTC of any legislative power. *See United States v. Kelly*, 874 F.3d 1037, 1047 (9th Cir. 2017) ("The [legislative] non-delegation doctrine provides that Congress may not constitutionally delegate its legislative power to another branch of Government." (internal quotation marks omitted)). And though those provisions involve some delegation of regulatory authority to DCMs as private entities, DCMs are tightly regulated and heavily supervised by the CFTC. *See Alpine Secs. Corp. v. Fin. Indus. Reg. Auth.*, 121 F.4th 1314, 1325 (D.C. Cir. 2024) ("[T]he private nondelegation doctrine . . . requires that a private entity statutorily delegated a regulatory role be supervised by a government actor."); *KalshiEx, LLC v. Hendrick*, No. 2:25-cv-00575, ECF No. 18 at 5-7 (D. Nev. filed March 28, 2025) (explaining comprehensive regulations Kalshi must comply with as a DCM). As relevant to the listing of sports-related event contracts on DCMs, private entities submit to the CFTC the information

required for self-certification, 7 U.S.C. § 7a-2(c)(1); 17 C.F.R. § 40.2(a), but it is the CFTC that regulates by deciding whether a new self-certified contract may be listed for trading on a DCM, 7 U.S.C. § 7a-2(c)(5)(B).

## IV. FEDERAL INDIAN POLICY IS SET BY CONGRESS.

Tribal Amici make several policy arguments concerning the potential impact of Robinhood's actions on Indian tribes and tribal governments. (Amici Brief at 17-19.) However, these policy arguments are best addressed to Congress, which legislated in this area in IGRA, UIGEA and the CEA and which can amend these statutes to address policy concerns if it deems necessary. *See United States v. Nishiie*, 996 F.3d 1013, 1028 (9th Cir. 2021) ("We sit as judges, not as legislators . . . . It is hardly this Court's place to pick and choose among competing policy arguments . . . ." (internal quotation marks and citations omitted)). Downstream implications notwithstanding, Congress, through the CEA, granted the CFTC exclusive jurisdiction to regulate transactions involving sports-related event contracts traded on a DCM and thereby preempted enforcement of state law that purports to regulate such transactions. 7 U.S.C. § 2(a)(1)(A).

RESPECTFULLY SUBMITTED this 14th day of October, 2025.

PISANELLI BICE PLLC

By: */s/ Jordan T. Smith*
Jordan T. Smith, Esq., #12097
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

and

Kevin J. Orsini, Esq. (*pro hac vice*)
Antony L. Ryan, Esq. (*pro hac vice*)
Brittany L. Sukiennik, Esq. (*pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
375 Ninth Avenue
New York, New York 10001

*Counsel for Plaintiff
Robinhood Derivatives, LLC*