Todd L. Bice, Esq., Bar No. 4534
TLB@pisanellibice.com
**PISANELLI BICE PLLC**
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: (702) 214-2100
Facsimile: (702) 214-2101

Kevin J. Orsini (*pro hac vice*)
korsini@cravath.com
Antony L. Ryan (*pro hac vice*)
aryan@cravath.com
Brittany L. Sukiennik (*pro hac vice*)
bsukiennik@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

***Counsel for Plaintiff***
***Robinhood Derivatives, LLC***

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ROBINHOOD DERIVATIVES, LLC, | CASE NO.: 2:25-cv-01541 |
| Plaintiff, | **PLAINTIFF ROBINHOOD'S MOTION** |
| vs. | **FOR AN INJUNCTION PENDING** |
| | **APPEAL** |
| MIKE DREITZER, in his official capacity as Chairman of the Nevada Gaming Control Board, et al., | |
| Defendants, | |
| vs. | |
| NEVADA RESORT ASSOCIATION, | |
| Intervenor-Defendant. | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

BACKGROUND ............................................................................................................3

LEGAL STANDARD.....................................................................................................4

ARGUMENT .................................................................................................................6

I.     ROBINHOOD IS ENTITLED TO AN INJUNCTION PENDING APPEAL. ..................6

       A.     Robinhood's Appeal Raises Serious Questions that Have Divided Courts and Is Likely To Succeed on the Merits .............................................................6

       B.     Robinhood Will Suffer Irreparable Harm Absent an Injunction Pending Appeal.10

       C.     The Equities and Public Interest Tilt Strongly in Robinhood's Favor...................13

II.    NO SECURITY—OR ONLY DE MINIMIS SECURITY—IS APPROPRIATE ............18

III.   IN THE ALTERNATIVE, THE COURT SHOULD ISSUE A BRIEF INJUNCTION TO ALLOW ROBINHOOD TO MOVE FOR INJUNCTIVE RELIEF PENDING APPEAL AT THE NINTH CIRCUIT ............................................................................................19

CONCLUSION.............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alden v. Maine*,
  527 U.S. 706 (1999)...................................................................................................11

*Alverto v. Dep't of Corrections*,
  No. C11-5572, 2012 WL 262396 (W.D. Wash. Jan. 3, 2012)..................................15

*Am. Beverage Ass'n v. City & Cnty. of S.F.*,
  No. 15-cv-03415, 2016 WL 9184999 (N.D. Cal. June 7, 2016)............................5, 9

*Apache Stronghold v. United States*,
  782 F. Supp. 3d 756 (D. Ariz. 2025) ...............................................................6, 7, 9

*Barahona-Gomez v. Reno*,
  167 F.3d 1228 (9th Cir. 1999) ...............................................................................18

*Blue Lake Rancheria v. Kalshi Inc.*,
  No. 25-cv-06162, 2025 WL 3141202 (N.D. Cal. Nov. 10, 2025) ............................8

*Caribbean Marine Servs. Co. v. Baldrige*,
  844 F.2d 668 (9th Cir. 1988) .................................................................................15

*Conservation Cong. v. U.S. Forest Serv.*,
  803 F. Supp. 2d 1126 (E.D. Cal. 2011)........................................................5, 10, 19

*Cothran v. Ellis*,
  16 N.E. 646 (Ill. 1888) ...........................................................................................17

*Disney Enters., Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017) .................................................................................10

*Feldman v. Ariz. Sec'y of State's Off.*,
  843 F.3d 366 (9th Cir. 2016) ...................................................................................4

*Gopher Protocol, Inc. v. Discover Growth Fund, LLC*,
  No. 2:19-CV-1039-JCM (BNW), 2020 WL 4018928 (D. Nev. July 15, 2020) .....................18

*Grondal v. United States*,
  No. 2:09-CV-18-RMP, 2020 WL 13388646 (E.D. Wash. Aug. 20, 2020) ............................11

*Idaho v. Coeur d'Alene Tribe*,
  794 F.3d 1039 (9th Cir. 2015) ...............................................................................11

*In re Hologenix, LLC*,
  No. CV 20-10109-FMO, 2020 WL 8457487 (C.D. Cal. Dec. 21, 2020) ...............................13

iii

*Irwin v. Williar*,
110 U.S. 499 (1884)..................................................................................17

*Jorgensen v. Cassiday*,
320 F.3d 906 (9th Cir. 2003) ...................................................................18

*KalshiEx LLC v. CFTC*,
119 F.4th 58 (D.C. Cir. 2024)...................................................................17

*KalshiEx LLC v. CFTC*,
No. 23-3257 (JMC), 2024 WL 4164694 (D.D.C. Sept. 12, 2024), *stay pending appeal
denied*, 119 F.4th 58 (D.C. Cir. 2024) .....................................................17

*KalshiEx LLC v. Flaherty*,
No. 25-cv-02152-ESK-MJS, 2025 WL 1218313 (D.N.J. Apr. 28, 2025) ...............8

*KalshiEx LLC v. Hendrick*,
No. 2:25-cv-00575-APG-BNW, 2025 WL 1073495 (D. Nev. Apr. 9, 2025) ................ *passim*

*KalshiEx LLC v. Martin*,
793 F. Supp. 3d 667 (D. Md. 2025) ...........................................................8

*KalshiEx, LLC v. Flaherty*,
No. 25-1922 (3d Cir.)................................................................................8

*L ALD LLC v Gray*,
No. 24-CV-02195-GPC-MSB, 2025 WL 319247 (S.D. Cal. Jan. 28, 2025)..........................13

*Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*,
601 F. App'x 469 (9th Cir. 2015) .............................................................11

*Miller v. Cal. Pac. Med. Ctr.*,
991 F.2d 536 (9th Cir. 1993) ...................................................................13

*N. Am. Derivatives Exch., Inc. v. Nevada ex rel. Nev. Gaming Control Bd.*,
No. 2:25-cv-00978-APG-BNW (D. Nev.).................................................1

*NetChoice v. Bonta*,
761 F. Supp. 3d 1232 (N.D. Cal. 2025) ...................................................5, 6, 7, 9

*Nken v. Holder*,
556 U.S. 418 (2009)..................................................................................5

*OG Int'l, Ltd. v. Ubisoft Entm't*,
No. C 11-04980 CRB, 2011 WL 5079552 (N.D. Cal. Oct. 26, 2011)....................15

*Or. Nat. Res. Council v. Marsh*,
No. CIV. 85-6433-E, 1986 WL 13440 (D. Or. Apr. 3, 1986) ..................................5

iv

*Protect Our Water v. Flowers*,
    377 F. Supp. 2d 882 (E.D. Cal. 2004)................................................5, 6, 7, 9

*Providence J. Co. v. Fed. Bureau of Investigation*,
    595 F.2d 889 (1st Cir. 1979)................................................................12

*Republic of Philippines v. Marcos*,
    862 F.2d 1355 (9th Cir. 1988)..............................................................18

*Robinhood Derivatives, LLC v. Campbell*,
    No. 1:25-CV-12578 (D. Mass.)................................................................4

*Robinhood Derivatives, LLC v. Flaherty*,
    No. 1:25-cv-14723-ESK-MJS (D.N.J.)........................................................8

*Sears Holding Mgmt. Corp. v. M. Bros., Inc.*,
    No. CV 14-06035-MWF (FFM), 2017 WL 11427080 (C.D. Cal. May 1, 2017)...................13

*Seneca Nation of Indians v. Paterson*,
    No. 10-CV-687A, 2010 WL 4027795 (W.D.N.Y. Oct. 14, 2010) ...........................5, 10

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
    709 F.3d 1281 (9th Cir. 2013)................................................................5

*Short v. Brown*,
    893 F.3d 671 (9th Cir. 2018)................................................................5

*Smillie v. Travelers Ins. Co.*,
    No. 06CV944-H (CAB), 2006 WL 8455809 (S.D. Cal. May 5, 2006)................................18

*Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*,
    Nos. 3:20-cv-00290-SLG, 3:20-cv-00308-SLG, 2021 WL 454280 (D. Alaska 2021) ...........19

*Stop H-3 Ass'n v. Volpe*,
    353 F. Supp. 14 (D. Haw. 1972)................................................................5

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ...........................................................10, 11

*Twenty-Nine Palms Band of Mission Indians v. Garland*,
    No. CV 5:24-00379-SSS-SPx, 2025 WL 3085614 (C.D. Cal. July 30, 2025) ...................6

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)................................................................4, 10

**Statutes & Rules**

Fed. R. App. P. 8................................................................4

Fed. R. Civ. P. 65 ...................................................................................................18

Fed. R. Civ. P. 62 ...................................................................................................4

Ninth Circuit Rule 27-3 ..........................................................................................19

**Other Authorities**

11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2904 (3d
    ed. 2025) ..........................................................................................................9

Nevada Gaming Control Board, Monthly Revenue Report (Aug. 2025), *available at*
    https://www.gaming.nv.gov/contentassets/a7958398526e4e309d248ea35a2a20dd/aug
    ust-2025-monthly-revenue-report.pdf......................................................................14

Nevada Gaming Control Board, Monthly Revenue Report (Sept. 2025), *available at*
    https://www.gaming.nv.gov/contentassets/a7958398526e4e309d248ea35a2a20dd/sep
    tember-2025-monthly-revenue-report.pdf .................................................................14

Notice to Licensees, KalshiEx and Robinhood Update (Nov. 25, 2025), *available at*
    https://www.gaming.nv.gov/siteassets/content/about/industry-notices/2025-100.pdf ............15

Notice to Licensees, Sports Event Contracts are Wagers (Oct. 15, 2025), available at
    https://www.gaming.nv.gov/contentassets/7568a04a6f774450a186ee4e28e1d614/noti
    ce-to-licensees-2025-77-10-15-25-.pdf ...................................................................16

Richard N. Velotta, *FanDuel, DraftKings Won't Be Licensed for Nevada Sportsbooks*,
    Las Vegas Rev. J. (Nov. 13, 2025), *available at*
    https://www.reviewjournal.com/business/casinos-gaming/fanduel-draftkings-wont-
    be-licensed-for-nevada-sportsbooks-3537270 .........................................................17

Pursuant to Federal Rule of Civil Procedure 62(d), Plaintiff Robinhood Derivatives, LLC ("Robinhood") moves this Court for an injunction pending appeal of the Court's denial of Robinhood's motion for a preliminary injunction (ECF No. 90[1] (the "PI Order"); ECF No. 7 (the "PI Motion")), enjoining Defendants[2] from enforcing Nevada gaming law against Robinhood for Robinhood's sports-related event contract activities until the Ninth Circuit rules on Robinhood's appeal.[3] Robinhood will notice an appeal of the PI Order.

As the Court has repeatedly recognized, this case presents important, novel and complex legal questions that make appellate review appropriate. Whether state gaming law is preempted as applied to Robinhood's offer of sports-related event contracts—the question at the heart of this matter—is being litigated in multiple forums and, as described below, different courts have reached different conclusions. That this Court itself has reached contrary conclusions on this issue illustrates the complex nature of this question. Indeed, the Court has acknowledged that there are "serious questions on the merits" (PI Order at 2), and that "these are difficult issues" on which the Court would appreciate the Ninth Circuit's "guidance" (*N. Am. Derivatives Exch., Inc. v. Nevada ex rel. Nev. Gaming Control Bd.* (hereinafter "*Crypto.com*"), No. 2:25-cv-00978-APG-BNW (D.

---

[1] Robinhood notes that while the PI Order is titled "Order Denying Motion for Temporary Restraining Order" (ECF No. 90 at 1), Robinhood had previously converted its motion for a temporary restraining order and preliminary injunction into a motion only for a preliminary injunction given Nevada's agreement to forbear from enforcement until the motion was heard, (ECF No. 24 at 2).

[2] Defendants are Mike Dreitzer, in his official capacity as Chairman of the Nevada Gaming Control Board; George Assad, in his official capacity as a Member of the Nevada Gaming Control Board; Chandeni K. Sendall, in her official capacity as a Member of the Nevada Gaming Control Board; Nevada Gaming Control Board, a subdivision of the State of Nevada; Jennifer Togliatti, in her official capacity as Chair of the Nevada Gaming Commission; Rosa Solis-Rainey, in her official capacity as a Member of the Nevada Gaming Commission; Brian Krolicki, in his official capacity as a Member of the Nevada Gaming Commission; George Markantonis, in his official capacity as a Member of the Nevada Gaming Commission; Nevada Gaming Commission, a subdivision of the State of Nevada; and Aaron D. Ford, in his official capacity as Attorney General of Nevada (collectively, the "Defendants").

[3] The Parties met and conferred on November 21, 2025, and Defendants stated that they would oppose an injunction pending appeal.

Nev.), ECF No. 104 at 63:16-18), and which "ultimately, . . . probably ha[ve] to go to the Supreme Court" (ECF No. 80 ("Hearing Tr.") at 111:22-23).

During the pendency of Robinhood's appeal, this Court should therefore preserve the status quo to prevent Robinhood from suffering irreparable harm. The Nevada Gaming Control Board (the "Board") has threatened civil and criminal enforcement against Robinhood for offering sports-related event contract trading to its Nevada customers. And Defendants indicated during the meet and confer process that they would oppose Robinhood's request for an injunction pending appeal. Instead, Defendants have agreed not to enforce Nevada gaming law against Robinhood only while Robinhood seeks an injunction pending appeal from this Court and, as needed, the Ninth Circuit.[4] And, in return for that agreement to forestall enforcement actions while this Court and the Ninth Circuit consider enjoining enforcement while the serious questions of federal preemption raised in this litigation are heard on appeal, Robinhood has been required to suspend offering new sports-related event contracts within Nevada beginning on December 1, 2025, and lasting until any injunction pending appeal is granted. (ECF No. 91.) If no injunction pending appeal is granted, Robinhood will be required to unwind all of its sports-related event contracts for Nevada customers pending any further decisions on the merits of this case. This departure from the status quo will harm Robinhood and its Nevada customers.

Robinhood does not ask that the Court reconsider its PI Order. The Court can properly grant an injunction pending appeal *even if* the Court believes its PI Order was correct in light of the novel and complex legal issues and the irreparable harm Robinhood will face absent an injunction. At a minimum, if the Court does not grant an injunction pending appeal, Robinhood respectfully requests a temporary injunction against enforcement action pending resolution by the Ninth Circuit of a motion Robinhood will make to stay enforcement pending appeal.

---

[4] Defendants previously agreed not to pursue any enforcement action against Robinhood for its offer of sports-related event contracts unless and until the Court denies Robinhood's PI Motion. (ECF No. 24 at 3.) Earlier today, the Parties filed a Joint Notice of Enforcement Pending Appeal detailing the Parties' non-enforcement agreement. (ECF No. 91.)

**BACKGROUND**

The Court is well acquainted with the facts and procedural history in this matter; accordingly, Robinhood addresses them only briefly. On April 9, 2025, the Court granted KalshiEx LLC's ("Kalshi") motion for a preliminary injunction, holding that the Commodity Exchange Act ("CEA") and Commodity Futures Trading Commission ("CFTC") regulations preempt Nevada gaming law and prevent the Board from enforcing such law against Kalshi for its offer of sports-related event contracts on its CFTC-designated contract market ("DCM"). *KalshiEx LLC v. Hendrick*, No. 2:25-cv-00575-APG-BNW, 2025 WL 1073495, at *3-8 (D. Nev. Apr. 9, 2025) (hereinafter, "*KalshiEx*"). On August 19, 2025, Robinhood moved for a preliminary injunction in the above-captioned matter on the same basis—*i.e.*, the CEA and CFTC regulations preempt Nevada gaming law to the extent it purports to regulate the facilitation of sports-related event contract transactions on a DCM. (ECF No. 7.)

On October 14, 2025, the Court denied the plaintiff's motion for preliminary injunction in *Crypto.com*, 2025 WL 2916151, at *14 (D. Nev. Oct. 14, 2025). The plaintiff there sought the same relief the Court had previously granted Kalshi. The Court found, however, that Nevada state gaming law was *not* preempted as applied to sports-related event contracts, because it concluded that such contracts are not "swaps" as defined by the CEA. *Id.* at *7-11. At the October 2, 2025 hearing on that motion, the Court welcomed the Ninth Circuit's guidance on these issues. *Crypto.com*, ECF No. 104 at 63:16-18 ("I will issue a written order. I will try to get it out quickly because I know you need something to appeal to the [Ninth] Circuit. I'm not offended. Give me some guidance.").

On October 20, 2025, in light of the *Crypto.com* decision, Nevada moved to dissolve Kalshi's preliminary injunction. (*KalshiEx*, ECF No. 142.)

On November 14, 2025, the Court heard argument on Nevada's motion to dissolve Kalshi's preliminary injunction in *Kalshi* as well as Robinhood's PI Motion (the "Hearing"). At the Hearing, the Court recognized that the matters before the Court would likely need to be resolved by the Ninth Circuit and eventually the Supreme Court. (Hearing Tr. at 111:20-23 ("I'm trying to clean up the record as best as I can so when I get my order out, either side can take me up to the

3

[Ninth Circuit].  I'm not going to be offended.  . . . [U]ltimately, this probably has to go to the Supreme Court.").)[5]

On November 21, 2025, the Parties met and conferred about the subject of this Motion. The Parties continued to negotiate and, on November 24, 2025, reached an agreement regarding an interim period of enforcement forbearance while Robinhood seeks an injunction pending appeal from this Court and, as needed, the Ninth Circuit.  (ECF No. 91.)

On November 25, 2025, the Court issued the PI Order denying Robinhood's motion for a preliminary injunction (ECF No. 90) and dissolved the preliminary injunction granted in *KalshiEx* (*KalshiEx*, ECF No. 237).  Shortly thereafter, Kalshi filed an emergency motion for a stay of the dissolution order pending appeal.  (*Id.*, ECF No. 238.)  Robinhood will appeal the PI Order.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 62, "[w]hile an appeal is pending from an interlocutory order or final judgment that . . . refuses . . . an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  Fed. R. Civ. P. 62(d).  Federal Rule of Appellate Procedure 8 states that a party must first move in the district court for an order granting an injunction while an appeal is pending before that same motion can be made to the court of appeals.  Fed. R. App. P. 8(a)(1)(C).

The standard for an injunction pending appeal is similar, but not identical, to the standard for a preliminary injunction.  *See Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016).  Courts consider:  (1) whether the movant is "likely to succeed on the merits," (2) whether it is "likely to suffer irreparable harm" absent an injunction; (3) whether the "balance of equities tips in [its] favor," and (4) whether "an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "The Ninth Circuit weighs these factors on a sliding scale, such that where there are only 'serious questions going to the merits'—that is, less

---

[5] The U.S. District Court for the District of Massachusetts recognized the same at the hearing on Robinhood's motion for preliminary injunction in *Robinhood Derivatives, LLC v. Campbell*, No. 1:25-CV-12578 (D. Mass.), ECF No. 71 at 26:19-24 ("I think . . . ultimately this is an issue for the Supreme Court as it is an important public issue and it's not just Massachusetts, but, . . . other . . . [c]ourts are facing in other states some of the same issue[s].").

than a 'likelihood of success' on the merits—[an] injunction may still issue so long as 'the balance of hardships tips sharply in the plaintiff's favor' and the other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (citing *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).  The third and fourth factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

"Applying the preliminary injunction factors can create some tension when a party seeks to appeal a district court's denial of a preliminary injunction.  In that circumstance, the district court would have just concluded that the preliminary injunction factors weighed in favor of denying injunctive relief." *NetChoice v. Bonta*, 761 F. Supp. 3d 1232, 1235 (N.D. Cal. 2025). Because the standard for an injunction pending appeal is not identical to the standard for a preliminary injunction, a party need not "meet the high bar for reconsideration" to obtain an injunction pending appeal. *Id.*  Rather, "a court may issue an injunction pending appeal even when it 'believe[s] its analysis in denying preliminary injunctive relief is correct.'" *Id.* (quoting *Am. Beverage Ass'n v. City & Cnty. of S.F.*, No. 15-cv-03415, 2016 WL 9184999, at *2 (N.D. Cal. June 7, 2016)).

"[D]istrict courts properly 'stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained.'" *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004) (quoting *Or. Nat. Res. Council v. Marsh*, No. CIV. 85-6433-E, 1986 WL 13440, at *1 (D. Or. Apr. 3, 1986)). "An injunction is 'frequently issued where the trial court is charting a new and unexplored ground and the court determines that a novel interpretation of the law may succumb to appellate review.'" *Id.* (quoting  *Stop H-3 Ass'n v. Volpe*, 353 F. Supp. 14, 16 (D. Haw. 1972)).[6]

---

[6] An injunction pending appeal may be appropriate even when there is no serious legal question at issue where, without an injunction, the plaintiff will be irreparably harmed. *See, e.g.*, *Conservation Cong. v. U.S. Forest Serv.*, 803 F. Supp. 2d 1126, 1132 (E.D. Cal. 2011) (granting ten-day injunction to allow the Ninth Circuit to consider a longer injunction pending appeal, where the plaintiffs failed to raise a serious legal question and the balance of equities did not tip sharply in their favor, but where plaintiffs would be irreparably harmed absent injunction); *Seneca Nation of Indians v. Paterson*, No. 10-CV-687A, 2010 WL 4027795, at *1-3 (W.D.N.Y. Oct. 14, 2010) (granting stay pending appeal where plaintiffs "failed to demonstrate a substantial possibility of success on appeal," but economic harms and harms to tribal sovereignty would be

**ARGUMENT**

**I.    ROBINHOOD IS ENTITLED TO AN INJUNCTION PENDING APPEAL.**

Because the standard for obtaining an injunction pending appeal is similar, but not identical, to the standard for obtaining a preliminary injunction, the Court should grant an injunction pending appeal even if the Court believes its analysis in the PI Order was correct. Robinhood is entitled to an injunction pending appeal because its appeal raises complex legal questions warranting appellate review, which now stands in for the requirement (on the PI motion) that Robinhood be likely to succeed on the merits. *Protect Our Water*, 377 F. Supp. 2d at 883-84. The threat of irreparable harm and the balance of equities also weigh in favor of granting an injunction.

**A.    Robinhood's Appeal Raises Serious Questions that Have Divided Courts and Is Likely To Succeed on the Merits**

An injunction pending appeal may be warranted to maintain the status quo during the pendency of an appeal. *See, e.g.*, *Twenty-Nine Palms Band of Mission Indians v. Garland*, No. CV 5:24-00379-SSS-SPx, 2025 WL 3085614, at *1 (C.D. Cal. July 30, 2025). In cases involving novel, difficult and complex legal questions of great local and national weight, an injunction maintaining the status quo is particularly appropriate. *See Apache Stronghold v. United States*, 782 F. Supp. 3d 756, 770 (D. Ariz. 2025) (citing *NetChoice*, 761 F. Supp. 3d at 1236). Here, an injunction pending appeal is appropriate because the Court is "charting a new and unexplored ground," *Protect Our Water*, 377 F. Supp. 2d at 884, in resolving the issues presented not only in this case, but also in *KalshiEx* and *Crypto.com*.

Robinhood maintains that its position is correct—that sports-related event contracts trading on a DCM fall within the exclusive jurisdiction of the CFTC, and state laws are preempted to the extent they purport to regulate such contracts—and it is therefore likely to succeed on the merits. (*See* ECF No. 7 at 11-20.) Robinhood hereby incorporates by reference its arguments about the likelihood of success on the merits from its PI Motion (*id.*; ECF No. 59 at 2-19), and as made by

---

irreparable). Therefore, the gravity of the irreparable harm provides an independent basis on which the Court should find that an injunction pending appeal is appropriate.

counsel for Kalshi and Robinhood at the Hearing (*see* Hearing Tr. at 7:18-62:25, 63:15-82:25, 97:16-108:21). But understanding that the Court disagrees, it is nevertheless uncontroversial that the question presented is novel and complex, and this matter requires that the Court "rule on an admittedly difficult legal question." *Protect Our Water*, 377 F. Supp. 2d at 884. The degree of difficulty is evidenced by how the Court grappled with these issues in two orders that reached opposite conclusions. *Compare KalshiEx*, 2025 WL 1073495 at *1, *with Crypto.com*, 2025 WL 2916151, at *14. Indeed, in its order dissolving the preliminary injunction in *KalshiEx*, the Court explicitly recognized this fact: "The issues in [*KalshiEx*] and similar cases are complex, novel, and evolving." (*KalshiEx*, ECF No. 237 at 24; *see also id.* at 4 ("This is a novel and evolving area of the law.")

This Court initially determined that Kalshi was likely to succeed in establishing that the CFTC's exclusive jurisdiction over sports-related event contracts traded on Kalshi's DCM preempts Nevada gaming laws. *KalshiEx*, 2025 WL 1073495, at *3-8. When it considered the same issue in *Crypto.com*, the Court underscored the novelty, difficulty and weight of the legal question before it. (*See Crypto.com*, ECF No. 104 at 58:14-16 ("It seems my decision is, do I destroy the Federal system of regulation or do I destroy the State systems of regulation?"); *id.* at 62:15-16 ("These are difficult issues, obviously.").) The Court also indicated that it welcomes guidance from the Ninth Circuit. (*Id.* at 63:16-18.) In *Crypto.com*, the Court ultimately determined that Nevada state gaming law was ***not*** preempted as applied to sports-related event contracts, because in the Court's view, such contracts are not "swaps" as defined by the CEA. *Crypto.com*, 2025 WL 2916151, at *7-11. These two orders illustrate that these questions are complex and "warrant further consideration before the status quo is disrupted." *Apache Stronghold*, 782 F. Supp. 3d at 770 (citing *NetChoice*, 761 F. Supp. 3d at 1236).

The Court reiterated during the Hearing its expectation that the Ninth Circuit would weigh in on these issues. (Hearing Tr. at 111:20-21.) The Court stressed how difficult the legal questions before it are: "There's a lot that I heard today that I hadn't considered. There are some arguments that had some interesting twists, and I don't want to rush a decision on an important issue. I recognize how important this is." (*Id.* at 109:13-16.) And in the order dissolving the preliminary

injunction in *KalshiEx*, the Court acknowledged the inevitability of appellate review.  (*KalshiEx*, ECF No. 237 at 4 ("The circumstances may change yet again when the Third and Fourth Circuits rule on the appeals pending in those courts, or when the Ninth Circuit rules on the inevitable appeal of my rulings in *Crypto*, this case, and *Robinhood*.").)  The Court also determined that both Robinhood and Kalshi have raised "serious questions on the merits."  (PI Order at 2; *KalshiEx*, ECF No. 237 at 24.)

Moreover, as further indication of the challenging nature of the core legal issue, courts around the country considering the exact same issue have reached inconsistent conclusions.  For example, in *KalshiEx LLC v. Flaherty*, No. 25-cv-02152-ESK-MJS, 2025 WL 1218313 (D.N.J. Apr. 28, 2025), the U.S. District Court for the District of New Jersey granted Kalshi's motion for a preliminary injunction on similar facts.  *Id.* at *8.  That decision is on expedited appeal at the Third Circuit and was argued on September 10, 2025.[7]  *KalshiEx, LLC v. Flaherty*, No. 25-1922 (3d Cir.), ECF No. 10 (granting motion to expedite consideration of appeal); *id.*, ECF No. 74 (setting oral argument).  By contrast, in the U.S. District Court for the District of Maryland, a similar motion for a preliminary injunction filed by Kalshi was denied, and an appeal of that decision is currently before the Fourth Circuit.  *KalshiEx LLC v. Martin*, 793 F. Supp. 3d 667 (D. Md. 2025); (*id.*, No. 25-cv-1283-ABA, ECF No. 80 (notice of appeal).)  And in this Circuit, in a similar action in which a federally-recognized tribe alleges that the facilitation of sports-related event contract trades violates the Indian Gaming Regulatory Act, the U.S. District Court for the Northern District of California recently found that it did not have jurisdiction to determine whether sports-related event contracts violate the CEA, as that determination is within the CFTC's exclusive jurisdiction.  *Blue Lake Rancheria v. Kalshi Inc.*, No. 25-cv-06162, 2025 WL 3141202,

---

[7] The New Jersey Division of Gaming Enforcement agreed not to enforce New Jersey gambling law against Robinhood while the district court's order in *Kalshi v. Flaherty* is on appeal.  (*Robinhood Derivatives, LLC v. Flaherty*, No. 1:25-cv-14723-ESK-MJS (D.N.J.), ECF No. 22.)

at *7 (N.D. Cal. Nov. 10, 2025).[8]  The Court should not allow Defendants to disrupt the status quo when the law is plainly unsettled.

For the avoidance of doubt, Robinhood does not request that the Court reconsider its PI Order.  "[A]n injunction pending appeal may be appropriate, even if the Court believe[s] its analysis in denying preliminary injunctive relief is correct."  *Am. Beverage Ass'n*, 2016 WL 9184999, at *2*; see also Apache Stronghold*, 782 F. Supp. 3d at 770 (granting an injunction pending appeal and finding that "there [was] no close question" despite the prior denial of the preliminary injunction).  That is the case here.  Whether the PI Order was rightly or wrongly decided will be a question for the Ninth Circuit; at this juncture, the Court itself has stated that the issues involved in this case are "complex, novel and evolving" (*KalshiEx*, ECF No. 237 at 24), and that Robinhood has raised "serious questions on the merits."  (PI Order at 2.)  Accordingly, this is a paradigmatic example of a case in which an injunction pending appeal is appropriate.  *See, e.g.*, *Am. Beverage Ass'n*, 2016 WL 9184999, at *2 (granting injunction pending appeal where matter presented a close legal question and the Ninth Circuit had not yet addressed the applicability of existing precedent to novel city ordinances concerning product disclaimers); *Apache Stronghold*, 782 F. Supp. 3d at 769 (granting injunction pending appeal where matter presented "novel, difficult, and important" questions and stating that such issues "might warrant appellate review before a law goes into effect"); *NetChoice*, 761 F. Supp. 3d at 1236 (finding an injunction pending appeal appropriate where "'the trial court is exploring new and unexplored ground' and 'rul[ing] on an admittedly difficult legal question'" (quoting *Protect Our Water*, 377 F. Supp. 2d at 884)); *see also* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2904 (3d ed. 2025) ("Many courts also take into account that the case raises substantial difficult or novel legal issues meriting a stay.").

---

[8] That determination is fundamentally at odds with the Court's finding that it **did** have jurisdiction to determine whether sports-related event contracts are "swaps" under the CEA. (*KalshiEx*, ECF No. 237 at 9.)

**B.    Robinhood Will Suffer Irreparable Harm Absent an Injunction Pending Appeal.**

Robinhood is entitled to an injunction pending appeal because it will otherwise suffer irreparable harm during the pendency of its appeal.  *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  Courts in this Circuit and others have found a likelihood of irreparable harm to be a sufficient reason to grant an injunction pending appeal.  *Conservation Cong.*, 803 F. Supp. 2d at 1132; *Seneca Nation of Indians*, 2010 WL 4027795, at *1-3.  Courts have also granted injunctions pending appeal where "the plaintiffs ha[d] not raised a serious legal question as to the merits of [the] case" but had demonstrated that significant and irreparable harm would occur absent relief.  *Conservation Cong.*, 803 F. Supp. 2d at 1132.  Here, even in the unlikely event that the Court does not agree that the legal questions are complex and substantial enough to merit the requested relief, the irreparable harm Robinhood faces without such relief alone also presents a sufficient reason to grant an injunction pending appeal.

 Loss of business and goodwill can inflict irreparable injury.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001); *see also Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (loss of goodwill "cannot readily be remedied with damages").  Because of the severe harm a civil or criminal enforcement action would cause Robinhood, Robinhood agreed to suspend offering new sports-related event contracts to Nevada residents beginning on December 1, 2025 (if Robinhood's motion for injunction pending appeal is not granted before that time).  (ECF No. 91.)  Robinhood also has agreed that if both this Court and the Ninth Circuit decline to issue an injunction pending appeal, it then also will have to unwind all open sports-related event contracts for Nevada residents at least while its appeal is resolved.  (*Id.*)  Winding down Nevada customers' open positions over what may be a short period of time would harm those customers, because those customers would be unable to see their positions through to resolution or to trade them.  (Declaration of Adam Hickerson in Support of Plaintiff Robinhood's Motion for Injunction Pending Appeal ("Hickerson Decl.") ¶ 8)

The cessation of offering new sports-related contracts to Nevada residents, along with the unwinding of existing contracts—both of which will occur absent an injunction—will cause Robinhood obvious economic losses.  These economic losses would be unrecoverable because

sovereign immunity bars Robinhood from obtaining monetary damages for the Board's impact on Robinhood's business. *See Alden v. Maine*, 527 U.S. 706, 712-13 (1999). Damages that are unrecoverable due to sovereign immunity constitute irreparable harm. *See, e.g.*, *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) (plaintiff state would suffer irreparable harm without a preliminary injunction because "the [defendant] Tribe's sovereign immunity likely would bar the State from recovering monetary damages"); *Grondal v. United States*, No. 2:09-CV-18-RMP, 2020 WL 13388646, at *5 (E.D. Wash. Aug. 20, 2020) ("[F]inancial harm can constitute irreparable injury in the context of preliminary injunctions when the money lost cannot be recovered later due to sovereign immunity."). Preventing Nevada customers from opening sports-related event contract positions would also undermine customers' confidence in Robinhood and their reliance on its financial services (Hickerson Decl. ¶ 9), causing irreparable harm. *KalshiEx*, 2025 WL 1073495, at *7; *see also Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*, 601 F. App'x 469, 474 (9th Cir. 2015).

Robinhood also stands to lose the goodwill of its customers, including its over 16,000 customers in Nevada who have entered into millions of sports-related event contracts and who will now be unable to trade new contracts and will have any open positions eventually closed by Robinhood in the absence of an injunction pending appeal. (Hickerson Decl. ¶¶ 4-5, 8.) Once lost, this goodwill could not easily or quickly be regained, even if Robinhood ultimately prevails in this litigation, and the risk to goodwill therefore also constitutes irreparable harm. *KalshiEx*, 2025 WL 1073495, at *7; *see also Life Alert*, 601 F. App'x at 474 (citing *Stuhlbarg Int'l Sales Co.*, 240 F.3d at 841) (holding that company was entitled to preliminary injunction due to "the threat to [its] reputation and goodwill," which "is not readily compensable").

In the order dissolving Kalshi's preliminary injunction, the Court found that "Kalshi's customers are on notice that offering gaming contracts implicates the CFTC's regulation," because the CFTC has directed DCMs and FCMs to issue warnings to customers about the risk of litigation, and that "[i]f customers continue trading in Kalshi's products, they, like Kalshi, are proceeding at their own risk." (*KalshiEx*, ECF No. 237 at 26.) The Court similarly found in its order in this case that any harm that Robinhood or customers might suffer was harm that they assumed by trading

in sports-related event contracts with uncertain legal status. (PI Order at 3 ("If customers continued trading in Kalshi's products through Robinhood, they, like Robinhood and Kalshi, were proceeding at their own risk.").)

However, regardless of any notice about legal risks, the critical point relevant to this motion is the harm that Robinhood and its *Nevada* customers will face from a disruption of trading in *Nevada*. And on this point, the important and undisputed history is that Robinhood began offering sports-related event contracts to Nevada customers only *after* this Court preliminarily enjoined Nevada from enforcing state gaming laws against Kalshi based on its finding that Kalshi was likely to succeed on the merits in proving that those laws are preempted by the CEA. (Hickerson Decl. ¶ 7); *KalshiEx*, 2025 WL 1073495, at *3-8. Thus, for the past three months, Robinhood has built a business in Nevada of offering sports-related event contracts to Nevada customers in direct reliance on this Court's prior ruling in *KalshiEx*, which the Court has now reversed, and every one of Robinhood's Nevada customers with an open contract opened that contract after that prior ruling was in place. While that was, of course, a ruling that was preliminary in nature and subject to change as the litigation proceeded, the fact remains that the harm Robinhood and its customers will now suffer by the Court's decision *not* to leave a preliminary injunction in place is real, financial and reputational harm that can be avoided by maintaining the status quo the Court created with its initial Order.

The Court also concluded that any harm to Robinhood could be resolved through geofencing. (PI Order at 3.) That is simply not true. Geofencing—if Robinhood had that technical ability—would, at most, *reduce* Robinhood's financial harm by changing the scope of the shutdown of sports-related event contracts to only customers physically in Nevada, while permitting trading to continue in other states even if the customer is a Nevada resident. But that would do nothing to change the fact that Robinhood will lose significant money by shutting down in Nevada while an appeal progresses. That unrecoverable financial harm, and loss of goodwill, is irreparable. (Hickerson Decl. ¶ 9.) The Court should therefore grant an injunction that will allow Robinhood to maintain the status quo for its Nevada customers while it avails itself of an appeal. *See Providence J. Co. v. Fed. Bureau of Investigation*, 595 F.2d 889, 890 (1st Cir. 1979)

12

(holding that an injunction pending appeal is appropriate where district court's order to disclose confidential documents would have caused the right of appeal to be moot absent an injunction and where "[t]he status quo could never be restored").

### C.      The Equities and Public Interest Tilt Strongly in Robinhood's Favor.

The remaining equitable factors also favor an injunction pending appeal.  If the Court does not grant an injunction pending appeal, the harm to Robinhood and its customers will be significant and irreparable for the reasons set forth above.

In contrast to Robinhood and its Nevada customers, the Board and the public would suffer little to no harm if the requested temporary relief is granted.  As an initial matter, any claims of severe harm now cannot be reconciled with the State's decision not to immediately appeal the preliminary injunction granted to Kalshi earlier this year.  *Cf. L ALD LLC v Gray*, No. 24-CV-02195-GPC-MSB, 2025 WL 319247, at *11 (S.D. Cal. Jan. 28, 2025) (finding that delay in enforcing rights against challenged conduct "demonstrates that there is a lack of irreparable harm") (citing *Miller v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993)).  Indeed, as noted above, it was only after the grant of the Kalshi preliminary injunction and Defendants' failure to appeal it that Robinhood began offering sports-related event contracts in Nevada.  (Hickerson Decl. ¶ 7.) Defendants do not (and cannot) explain why they chose not to appeal the grant of a preliminary injunction to Kalshi in April (which was immediately appealable), thereby permitting Kalshi to continue offering sports-related event contracts to Nevada customers (its own and Robinhood's) for seven more months, or why there is now an emergency that requires upsetting the status quo. Defendants' two positions are irreconcilable, and since they were happy to live with the status quo following the Court's initial order they should also be held to the same pending appeal.  *Sears Holding Mgmt. Corp. v. M. Bros., Inc.*, No. CV 14-06035-MWF (FFM), 2017 WL 11427080, at *3 (C.D. Cal. May 1, 2017) (finding that "issuance of a stay will not harm [defendant] at all," because "[i]ssuance of a stay merely preserves the current status quo," and that "the public interest will not be harmed by maintaining the status quo"); *In re Hologenix, LLC*, No. CV 20-10109-FMO, 2020 WL 8457487, at *3 (C.D. Cal. Dec. 21, 2020) (determining that the public interest weighs in favor

of maintaining the status quo because it "ensur[es] a party's right to seek redress through the courts").

Indeed, in this matter, prior to the Hearing, Defendants *never* affirmatively explained any irreparable harm that may be caused to Nevada if the status quo continues for a further limited period to allow the Ninth Circuit to consider the matter—and Defendants attempted to do so only after the Court raised the issue. Defendants' Opposition to the PI Motion and Sur-Reply in Opposition to the PI Motion never argued that the State will face irreparable harm, merely that Robinhood cannot establish its own irreparable harm. (*See* ECF No. 25 at 17-18 (arguing that Robinhood cannot establish irreparable harm); ECF No. 71 at 4 (same).) And for good reason: the Board's Gaming Revenue Reports demonstrate that the Nevada gaming industry is thriving. In August 2025, the win revenue statewide of all reporting licensees for table, counter and card games; slot machines; race book parimutuel betting; and sports betting was $1.29 ***billion***.[9] That same figure for September 2025—after Robinhood launched sports-related event contract trading for its Nevada customers on August 19, 2025—***increased*** to $1.36 billion.[10]

In its decisions to dissolve the preliminary injunction in *KalshiEx* and to deny Robinhood's requested injunction, the Court nonetheless focused on potential financial harm to Nevada if an injunction were left in place. (*See KalshiEx*, ECF No. 237 at 25 (finding that tax revenues and interest in fair competition outweigh irreparable financial harms to Kalshi); ECF No. 90 at 3 (incorporating the reasoning in *KalshiEx*).) Specifically, the Court reasoned that harm to the Nevada economy and lost tax revenue are hardships weighing in Defendants' favor. (*KalshiEx*, ECF No. 237 at 25.) If the Court gives weight to these purported financial losses, however, it should also give weight to Robinhood's financial losses. Further, there is no evidence in the record that the availability of sports-related event contracts in Nevada has had *any* impact on the extent

---

[9] Nevada Gaming Control Board, Monthly Revenue Report (Aug. 2025), *available at* https://www.gaming.nv.gov/contentassets/a7958398526e4e309d248ea35a2a20dd/august-2025-monthly-revenue-report.pdf.

[10] Nevada Gaming Control Board, Monthly Revenue Report (Sept. 2025), *available at* https://www.gaming.nv.gov/contentassets/a7958398526e4e309d248ea35a2a20dd/september-2025-monthly-revenue-report.pdf.

of sports wagering at Nevada casinos. Thus, to the extent sports-related event contracts have a potential impact on those casino revenues and associated tax revenue, that harm is entirely speculative and cannot be accorded any weight in the balancing of hardships. *See, e.g.*, *Alverto v. Dep't of Corrections*, No. C11-5572 RJB/KLS, 2012 WL 262396, at *4 (W.D. Wash. Jan. 3, 2012) ("A showing of speculative injury is insufficient grounds for finding that there is irreparable harm.") (citing *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)); *OG Int'l, Ltd. v. Ubisoft Entm't*, No. C 11-04980 CRB, 2011 WL 5079552, at * (N.D. Cal. Oct. 26, 2011) ("Given the speculative nature of [the defendant's] alleged harms, the Court finds that the balance does not [tip] sharply in [the defendant's] favor.").

Moreover, while the Court cited to the recent announcement of DraftKings's and FanDuel's decisions to abandon their pursuit of Nevada sports-wagering licenses as evidence the State would suffer financial and regulatory harm if the status quo since April remained in place (*KalshiEx*, ECF No. 237 at 27-28), there are important facts relevant to those decisions that were not brought to the Court's attention because Nevada never raised this issue prior to the Hearing. The issue here is not that entities have voluntarily decided to abandon Nevada licensing due to conduct within Nevada. Instead, the State of Nevada has made it clear—as recently as yesterday, following the Court's rulings—that it is attempting to extend its reach to the trading of event contracts *even outside Nevada*.[11]

Specifically, the State made clear to DraftKings and FanDuel that it would not grant them a Nevada license in light of their sports-related event contract activities *elsewhere*. It was following the Board's taking that position that DraftKings and FanDuel decided not to seek licensure in Nevada in order to launch prediction markets in other states.[12] In other words, Nevada is conditioning a Nevada gaming license on whether companies offer federally regulated event contracts *in other states*—and Nevada has to live with the tax consequences of this policy decision,

---

[11] Nevada Gaming Control Board, Notice to Licensees, KalshiEx and Robinhood Update (Nov. 25, 2025) (hereinafter, "NGCB November 25 Notice"), *available at* https://www.gaming.nv.gov/siteassets/content/about/industry-notices/2025-100.pdf.

[12] *See KalshiEx*, ECF No. 237 at 28.

consequences that have absolutely nothing to do with Robinhood's or Kalshi's offering of sports-related event contracts *in Nevada*.

As Nevada reaffirmed in a notice issued yesterday afternoon, its position is that "if a licensee offers Sports or Other Event Contracts  in another state without complying with the other state's restrictions, prohibitions or licensing regime; partners with another entity that engages in such activities; or acts in violation of a compacted tribal right, the licensee may be subject to discipline under the Gaming Control Act."[13]  Nevada further explained that "[e]ngaging in unlawful sports wagering in another state or entering into a business relationship with another entity offering unlawful sports wagering in another state may call into question the good character and integrity of the licensee."  (*Id.*)  These same statements were made by Nevada *before* DraftKings and FanDuel withdrew their Nevada license applications.[14]

Thus, the issue here is not as simple as a concern that entities will decide not to seek licenses in Nevada simply to avoid Nevada taxes and regulations.  To the contrary, Nevada's regulatory position seems to be that no entity—not Kalshi, not Robinhood, not FanDuel, and not DraftKings—can become a licensed Nevada entity unless they abandon all sports-related event contract trading on CFTC regulated exchanges in all other jurisdictions, because the trading of such contracts is viewed by Nevada regulators as violative of certain state gaming laws.[15]  This raises serious federalism questions, reaffirms the importance of uniform federal regulation by the CFTC of trading on designated exchanges, and also undermines the idea that the FanDuel and DraftKings withdrawals are evidence of alleged harm to Nevada *from Robinhood's making*

---

[13] NGCB November 25 Notice at 2.

[14]  Nevada Gaming Control Board, Notice to Licensees, Sports Event Contracts are Wagers (Oct. 15, 2025), *available at* https://www.gaming.nv.gov/contentassets/7568a04a6f774450a186ee4e28e1d614/notice-to-licensees-2025-77-10-15-25-.pdf.

[15] Of course, Robinhood maintains that these state laws as applied to sports-related event contract trading on CFTC-designated contract markets are preempted by the Commodities Exchange Act and so nowhere is there violation of state gaming laws.

*available sports-related event contracts in Nevada* given the regulatory overreach that led to those entities' decisions.[16]

Finally, while the Court is correct that Nevada has an interest in regulating gambling within its state, it is equally true that for more than 50 years, Congress has exercised its rights under the Supremacy Clause to displace that interest in favor of federal regulation for trading on regulated exchanges. For decades, states took the position—including through statute—that the purchase and sale of futures contracts in commodities such as grain constituted "gambling." This history is strikingly reflected in the holding of the Illinois Supreme Court that futures contracts constituted "gambling in grain," *Cothran v. Ellis*, 16 N.E. 646, 647 (Ill. 1888), and the United States Supreme Court's determination that a futures contract was "nothing more than a wager," *Irwin v. Williar*, 110 U.S. 499, 508-09 (1884). Congress preempted such state gaming regulations more than 50 years ago, and has allowed this "gambling" to occur on designated exchanges without regard to any state regulations, including age restrictions, ever since. Federal law also clearly permits trading in contracts concerning elections, which is also unlawful under Nevada state law. *See KalshiEx LLC v. CFTC*, No. 23-3257 (JMC), 2024 WL 4164694, at *7-13 (D.D.C. Sept. 12, 2024), *stay pending appeal denied*, 119 F.4th 58 (D.C. Cir. 2024) (finding Kalshi's election contracts lawful); *see also KalshiEx LLC v. CFTC*, 119 F.4th 58, 67 (D.C. Cir. 2024) (finding that the CFTC failed to establish irreparable harm in its challenge to election event contracts). Where, as the Court has recognized, there are at least serious questions of whether federal law preempts Nevada state gaming regulations as it relates to trading of sports-related events contracts on DCMs, and where Congress for more than half a century has shown that it can and will displace state gaming regulations, the hardships on this issue do not tip in Nevada's favor.

---

[16] *See also* Richard N. Velotta, *FanDuel, DraftKings Won't Be Licensed for Nevada Sportsbooks*, Las Vegas Rev.-J. (Nov. 13, 2025), *available at* https://www.reviewjournal.com/business/casinos-gaming/fanduel-draftkings-wont-be-licensed-for-nevada-sportsbooks-3537270 (detailing how DraftKings' parent company "was on the verge of being licensed in the state" until the Board removed its suitability hearings from its agenda due to the company launching a prediction market app).

In sum, Defendants seek to upend the status quo where there is a real chance of reversal of the Court's denial of the PI Motion, where Defendants have undermined any claim of harm by failing to appeal Kalshi's preliminary injunction, and where Defendants have never articulated any harm done to Nevada while the requested injunction would be in place.  The Court found that there are serious questions going to the merits here.  (ECF No. 90 at 2; *KalshiEx*, ECF No. 237 at 24.) "Serious questions are those which cannot be resolved at the preliminary injunction hearing, and as to which the Court perceives the need to maintain the status quo, keeping one side from altering the status quo and disrupting the ultimate resolution."  *Smillie v. Travelers Ins. Co.*, No. 06CV944-H (CAB), 2006 WL 8455809 (S.D. Cal. May 5, 2006) (citing *Republic of Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)).  Allowing Defendants to upend the status quo before the merits of Robinhood's appeal are determined by the Ninth Circuit would be incompatible with the finding that serious questions exist.  The equities here strongly favor the issuance of an injunction pending appeal.

## II.    NO SECURITY—OR ONLY *DE MINIMIS* SECURITY—IS APPROPRIATE

As with a preliminary injunction, a party seeking an injunction pending appeal must "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c); *Gopher Protocol, Inc. v. Discover Growth Fund, LLC*, No. 2:19-CV-1039-JCM (BNW), 2020 WL 4018928, at *1 (D. Nev. July 15, 2020) ("This same principle applies when a party 'has been enjoined in order to preserve the status quo pending appeal.'" (quoting *Glob. Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 21 (1st Cir. 2007))).  The amount of the bond is left to the discretion of the Court.  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)).

Here, no security is needed because Defendants will not suffer any non-speculative harm by delaying enforcement for a short period to allow the Ninth Circuit to rule.  *See Jorgensen*, 320 F.3d at 919 (affirming decision not to require bond). Recognizing, however, that this Court held that a *de minimis* bond was appropriate for Kalshi with respect to a preliminary injunction, *KalshiEx*, 2025 WL 1073495, at *8, such security for Robinhood should also be *de minimis* under

these circumstances and no greater than $10,000—the amount of the bond Kalshi was ordered to post, *id.*

### III. IN THE ALTERNATIVE, THE COURT SHOULD ISSUE A BRIEF INJUNCTION TO ALLOW ROBINHOOD TO MOVE FOR INJUNCTIVE RELIEF PENDING APPEAL AT THE NINTH CIRCUIT

Under Federal Rule of Appellate Procedure 8(a), Robinhood is entitled to seek an injunction pending appeal from the Ninth Circuit if the same request is denied by this Court. District courts may grant short-term injunctions that cover the period of time during which an appellant seeks an injunction pending relief from the Ninth Circuit. *See, e.g.*, *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, Nos. 3:20-cv-00290-SLG, 3:20-cv-00308-SLG, 2021 WL 454280, at *4 (D. Alaska 2021) (granting two-week injunction or until the Ninth Circuit ruled on a motion directed to that court); *Conservation Cong.*, 803 F. Supp. 2d at 1134-35 (granting ten-day injunction).

If the Court is disinclined to grant this Motion for an injunction pending appeal, Robinhood respectfully requests that the Court at least grant a temporary three-week injunction. An injunction of that duration would allow Robinhood to seek an injunction pending appeal from the Ninth Circuit on an emergency basis, consistent with Circuit Rule 27-3. *See* 9th Cir. R. 27-3 (setting out 21-day timeline for rulings on emergency motions). Although Robinhood submits that an injunction pending the full duration of the appeal is warranted, if the Court disagrees, a three-week injunction would give Robinhood time to be heard in the Ninth Circuit on an injunction pending appeal and would be appropriate to prevent the irreparable harms described above that would accrue from Robinhood preventing its Nevada customers from entering new sports-related event contracts during this interim period and would not pose significant hardship to Defendants.

/ / /

/ / /

/ / /

**CONCLUSION**

For the reasons set forth above, the Court should grant Robinhood's motion for an injunction pending appeal. If the Court is disinclined to grant this relief, the Court should, in the alternative, grant an interim injunction preserving the status quo while Robinhood seeks relief from the Ninth Circuit.

DATED this 26th day of November, 2025.

PISANELLI BICE PLLC

By: /s/ Todd L. Bice
　　　　 Todd L. Bice, Esq., Bar No. 4534
　　　　 400 South 7th Street, Suite 300
　　　　 Las Vegas, Nevada 89101

　　　　 Kevin J. Orsini, Esq.
　　　　 (*pro hac vice*)
　　　　 Antony L. Ryan, Esq.
　　　　 (*pro hac vice*)
　　　　 Brittany L. Sukiennik, Esq.
　　　　 (*pro hac vice*)
　　　　 CRAVATH, SWAINE & MOORE LLP
　　　　 375 Ninth Avenue
　　　　 New York, New York 10001

*Counsel for Plaintiff*
*Robinhood Derivatives, LLC*