Todd L. Bice, Esq., Bar No. 4534
TLB@pisanellibice.com
**PISANELLI BICE PLLC**
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: (702) 214-2100
Facsimile: (702) 214-2101

Kevin J. Orsini (*pro hac vice*)
korsini@cravath.com
Antony L. Ryan (*pro hac vice*)
aryan@cravath.com
Brittany L. Sukiennik (*pro hac vice*)
bsukiennik@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Counsel for Plaintiff*
*Robinhood Derivatives, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBINHOOD DERIVATIVES, LLC, | CASE NO.: 2:25-cv-01541-APG-DJA |
| Plaintiff, | **PLAINTIFF ROBINHOOD'S REPLY IN SUPPORT OF MOTION FOR AN INJUNCTION PENDING APPEAL** |
| vs. | |
| MIKE DREITZER, in his official capacity as Chairman of the Nevada Gaming Control Board, et al., | |
| Defendants, | |
| vs. | |
| NEVADA RESORT ASSOCIATION, | |
| Intervenor-Defendant. | |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT .................................................................................................................................2

I.      DEFENDANTS MISSTATE THE APPLICABLE STANDARD AND MISCHARACTERIZE THE RELIEF ROBINHOOD IS SEEKING ............................................2

II.     ROBINHOOD MEETS THE FLEXIBLE STANDARD FOR AN INJUNCTION PENDING APPEAL .......................................................................................................................5

       A.      The Court Has Already Ruled That There Are Serious Questions on the Merits .........................................................................................................................5

       B.      Robinhood Has Demonstrated a Likelihood of Irreparable Harm ..........................5

       C.      The Balance of Equities Tips Sharply in Robinhood's Favor .................................9

III.     THE SECURITY DEFENDANTS SEEK IS EXCESSIVE .............................................12

IV.    DEFENDANTS WAIVED ANY OPPOSITION TO ROBINHOOD'S REQUEST FOR ALTERNATIVE RELIEF ..................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Beverage Ass'n v. City & Cnty. of S.F.*, No. 15-cv-03415-EMC, 2016 WL
    9184999 (N.D. Cal. June 7, 2016) ...................................................................................4

*Apache Stronghold v. United States*, 782 F. Supp. 3d 756 (D. Ariz. 2025) ...................................5

*Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120 (9th Cir. 2024)....................................................7, 8

*Bowles v. Russell*, 551 U.S. 205 (2007) (Souter, J., dissenting).......................................................9

*Champion Int'l Corp. v. Brown*, 731 F.2d 1406 (9th Cir. 1984)....................................................10

*Conservation Cong. v. U.S. Forest Serv.*, 803 F. Supp. 2d 1126 (E.D. Cal. 2011) .........................6

*Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366 (9th Cir. 2016) .........................................3

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180 (9th Cir.
    2024) ................................................................................................................................4

*Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.*, No. CV 13-05504-SJO,
    2013 WL 12131744 (C.D. Cal. Aug. 13, 2013)................................................................9

*John Doe Co. v. CFPB*, 235 F. Supp. 3d 194 (D.C. Cir. 2017)........................................................7

*KalshiEx, LLC v. Hendrick*, No. 2:25-cv-00575-APG-BNW, 2025 WL 3286282 (D.
    Nev. Nov. 24, 2025).........................................................................................................11

*KalshiEx, LLC v. Hendrick*, No. 2:25-cv-00575-APG-BNW, 2025 WL 1073495 (D.
    Nev. Apr. 9, 2025).............................................................................................................4

*Marlyn Neutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873 (9th
    Cir. 2009) ..........................................................................................................................4

*NetChoice v. Bonta*, 761 F. Supp. 3d 1232 (N.D. Cal. 2025)............................................2, 3, 4, 5

*Or. Nat. Res. Council v. Marsh*, Civ. No. 85-6433-E, 1986 WL 13440 (D. Or. Apr.
    3, 1983) .............................................................................................................................3

*Original Invs., LLC v. Oklahoma*, 542 F. Supp. 3d 1230 (W.D. Okla. 2021) .................................7

*Pacito v. Trump*, 772 F. Supp. 3d 1204 (W.D. Wash. 2025).........................................................12

*Planned Parenthood Monte Mar, Inc. v. Ford*, No. 3:85-cv-00331-ART-CSD, 2025
    WL 1210968 (D. Nev. Apr. 25, 2025) ............................................................................10

*Protect Our Water v. Flowers*, 377 F. Supp. 2d 882 (E.D. Cal. 2004).......................................3, 5

*Seneca Nation of Indians v. Paterson*, No. 10-CV-687A, 2010 WL 4027795
    (W.D.N.Y. Oct. 14, 2010)..............................................................................................4, 6

*Stop H-3 Ass'n v. Volpe*, 353 F. Supp. 14 (D. Haw. 1972)..................................................................3

*United States v. Arizona*, 703 F. Supp. 2d 980 (D. Ariz. 2010), *injunction terminated by United States v. Arizona*, No. 10-CV-01413-PHX-SRB, 2012 WL 4076192 (D. Ariz. Sept. 18, 2012) ...........................................................................................7

*United States v. City of Los Angeles*, 595 F.2d 1386 (9th Cir. 1979) ............................................7

**Statutes & Rules**

Fed. R. Civ. P. 65(c) ........................................................................................................................12

Fed. R. Civ. P. 62...........................................................................................................................2, 3

**Other Authorities**

Nevada Gaming Control Board, Monthly Revenue Report (Oct. 2025), *available at* https://www.gaming.nv.gov/siteassets/content/about/gaming-revenue/2025oct-gri.pdf ...........................................................................................................................................11

**PRELIMINARY STATEMENT**

The Court has already recognized that the issues raised in this litigation are complex, open to different interpretations, and will be resolved only by the appellate courts (including, potentially, the United States Supreme Court). The Court itself has come out in two different ways on these issues in the past eight months, first granting Kalshi an injunction against Defendants on the ground that state law is likely preempted and then finding otherwise (including in this case) and vacating that initial injunction. Given the serious questions at issue, and the good faith actions of Robinhood, the Court can and should grant a temporary injunction pending appeal to maintain the current status quo and avoid irreparably injuring Robinhood (and its customers). None of Defendants' arguments in opposition establish otherwise.

*First*, Defendants frame their opposition around the idea that for the Court to grant Robinhood's motion for an injunction pending appeal, it must reconsider its prior ruling and decide that it should have granted the requested injunction. That is incorrect. Reconsideration motions and motions for injunctions pending appeal are not the same. Courts can and do grant injunctions pending appeal even when they believe the original decision denying an injunction that will be the subject of the appeal was correct. As a result, the test applicable to a motion for an injunction pending appeal is a more flexible test than the traditional preliminary injunction standard, and Robinhood has shown that the novel issues and equities in this case warrant this limited relief. Moreover, Defendants' arguments about the "status quo" ignore reality. The "status quo" Robinhood seeks to maintain is the months-long period where it offered sports-related event contracts in reliance on the Court's order granting a preliminary injunction to Kalshi, which Defendants never appealed. (*See* Section I.)

*Second*, Robinhood meets all the elements for an injunction pending appeal. The Court itself has ruled that there are serious questions on the merits. The threat of civil enforcement, criminal penalties, lost business, and lost goodwill all constitute irreparable harm, and Defendants' arguments in response are unavailing. The balance of the equities also tips decidedly in favor of an injunction pending appeal: Defendants present no evidence that Robinhood's presence has negatively impacted the gaming industry. In vacating Kalshi's injunction, the Court focused on

its view that the withdrawal of licensing applications by DraftKings and FanDuel tipped the equities in Defendants' favor. However, in the Motion, Robinhood provided evidence not previously in the record explaining that those exits were not the result of this Court's ruling in the *Kalshi* case, but instead the State's regulatory overreach designed to interfere with the trading of sports-related event contracts nationwide. Defendants fail to respond to these arguments, thereby conceding that these events in no way support their claimed harm. (*See* Section II.)

*Third*, no security, or at most a *de minimis* security, is appropriate if the Court grants the requested relief. The Court previously ordered Kalshi to put up a $10,000 bond when it was granted a preliminary injunction. Defendants now ask that the Court increase that by fifty times but provide no support for that result. (*See* Section III.)

*Fourth*, Robinhood requested—in the alternative—a three-week injunction to give it time to seek an injunction pending appeal from the Ninth Circuit in the event this Court does not grant broader relief. Defendants did not respond to this request at all and have thus waived any arguments in opposition. Thus, while Robinhood believes the Court should grant a full injunction pending appeal, at a minimum a three-week injunction is warranted. (*See* Section IV.)[1]

**ARGUMENT**

**I.   DEFENDANTS MISSTATE THE APPLICABLE STANDARD AND MISCHARACTERIZE THE RELIEF ROBINHOOD IS SEEKING**

In opposing Robinhood's request for an injunction pending appeal, Defendants fundamentally mischaracterize the applicable legal standard and Robinhood's requested relief.

*First*, Defendants begin their motion by arguing that "to grant Robinhood's requested relief," the Court would have to "reconsider the Order of Denial or determine whether this Court got it right or wrong" in the first place. (Opposition (Docket No. 95) at 2.) That is incorrect. In fact, as the Northern District of California explained in *NetChoice v. Bonta*, 761 F. Supp. 3d 1232, 1235 (N.D. Cal. 2025), parties in the Ninth Circuit need not "meet the high bar for reconsideration to secure an injunction pending appeal." That makes obvious sense. Rule 62 explicitly permits

---

[1] Robinhood also responds herein to the arguments presented by the Nevada Resort Association ("NRA") in opposition to the Motion (Docket No. 98).

an injunction pending appeal to issue where a preliminary injunction has been denied. If the standard for an injunction pending appeal was the same as a motion for reconsideration, there would never be a need for Rule 62 because the party initially denied an injunction would simply get the requested injunction on reconsideration with no need for an appeal of the initial denial.

In fact, the standard the Court must apply in considering Robinhood's request for an injunction pending appeal is the standard set forth in Robinhood's opening papers. That standard, under *Feldman v. Arizona Secretary of State's Office*, 843 F.3d 366, 367 (9th Cir. 2016), requires analysis of the four well-known preliminary injunction factors, either under the traditional articulation requiring a showing of likelihood of success on the merits or under the Ninth Circuit's "sliding scale" approach applied when there are serious questions on the merits. When applied in the context of a request for a limited injunction pending appeal, however, those tests must be applied with greater flexibility than when they are applied to an initial request for preliminary injunctive relief. *NetChoice*, 761 F. Supp. 3d at 1236 (finding injunctions pending appeal are appropriate where "'the trial court is charting a new and unexplored ground' by 'rul[ing] on an admittedly difficult legal question[,] and when the equities of the case suggest that the status quo should be maintained'") (quoting *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004)); *Or. Nat. Res. Council v. Marsh*, Civ. No. 85-6433-E, 1986 WL 13440 (D. Or. Apr. 3, 1983) (finding injunctions pending appeal to be appropriate when the matter involves a difficult legal question and the equities warrant the injunction); *Stop H-3 Ass'n v. Volpe*, 353 F. Supp. 14, 16 (D. Haw. 1972) (finding that a stay of the court's own order on an injunction "is frequently issued where the trial court is charting new and unexplored ground and the court determines that a novel interpretation of the law may succumb to appellate review"). This increased flexibility required under the law dispenses with Defendants' argument that the Court has already applied the relevant standard and denied an injunction; while the elements may be the same, the way in which those elements are applied fundamentally differs between a motion for an injunction and a more limited motion for an injunction pending appeal.

Under this approach, and contrary to Defendants' attempt to recast the instant motion as a motion for reconsideration, courts grant injunctions pending appeal where there are "weighty" or

"novel" legal issues even when the court believes its initial ruling denying an injunction remains correct. *See, e.g.*, *NetChoice*, 761 F. Supp. at 1236; *Am. Beverage Ass'n v. City & Cnty. of S.F.*, No. 15-cv-03415-EMC, 2016 WL 9184999 (N.D. Cal. June 7, 2016) (granting injunction pending appeal where the court maintained its denial of preliminary injunction was correctly decided, because case presented a close and important question); *Seneca Nation of Indians v. Paterson*, No. 10-CV-687A, 2010 WL 4027795 (W.D.N.Y. Oct. 14, 2010) (granting injunction pending appeal where case presented important issues and the plaintiffs would be irreparably harmed during their appeal if an injunction did not issue). Defendants do nothing at all to engage with these cases.

*Second*, Defendants spend a significant amount of time in opposition arguing that the status quo should be considered as the moment before Robinhood ever offered a sports-related event contract in the state of Nevada. This argument ignores the reality of the facts at issue here. It is undeniable that Robinhood resumed offering sports-related event contracts in this state ***only after*** this Court enjoined the State from enforcing its laws against the very contracts at issue in this litigation. *KalshiEx, LLC v. Hendrick*, No. 2:25-cv-00575-APG-BNW, 2025 WL 1073495 (D. Nev. Apr. 9, 2025). That decision was issued in April and Defendants never bothered to appeal it, instead allowing the injunction to remain in place for months. It was in reliance on this Court's decision and Nevada's lack of an appeal that Robinhood reentered the Nevada market, forming new customer relationships and offering new products. It is that status quo that Defendants agreed should remain in place until the Court ruled on Robinhood's motion for a preliminary injunction, stipulating to non-enforcement to avoid the need for a TRO. And it is this status quo Robinhood seeks to preserve pending appeal.

Defendants' cited cases change nothing. They rely primarily on *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180 (9th Cir. 2024), in which the Ninth Circuit explored the question of what could be considered the status quo ex ante because doing so was necessary to determine whether the plaintiffs' requested injunction was prohibitory or mandatory. *Id.* at 1191; *see also Marlyn Neutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009) (discussing "status quo ante litem" to determine whether an injunction was prohibitory

or mandatory). Here, the injunction Robinhood seeks is unquestionably prohibitory: It would prevent Nevada from enforcing state gaming laws just as the *Kalshi* injunction did.

## II. ROBINHOOD MEETS THE FLEXIBLE STANDARD FOR AN INJUNCTION PENDING APPEAL

As discussed in the previous section, the standard for an injunction pending appeal is similar to, but more flexible than, the standard for a preliminary injunction. The Ninth Circuit's serious questions test thus applies, but must be considered in the context of this more limited request. Robinhood has satisfied this standard.

### A. The Court Has Already Ruled That There Are Serious Questions on the Merits

The first relevant factor under the Ninth Circuit's "sliding scale" standard is whether there are "serious questions" on the merits. This factor weighs in Robinhood's favor for one simple reason: The Court has already determined that there are "serious questions" on the merits. (*See* PI Order at 2 ("Robinhood has shown serious questions on the merits.").) Defendants do not suggest otherwise, nor could they. Instead, they claim that because the Court denied Robinhood's requested injunction based on an analysis of the *other* preliminary injunction factors, Robinhood's more limited request for an injunction pending appeal must also be denied. As discussed above, that is simply not the law. Instead, where—as here—there are serious questions on the merits with respect to legal issues that are novel and complex, this factor weighs strongly in favor of a limited injunction to preserve the status quo while the appellate courts are given the opportunity to weigh in. *NetChoice*, 761 F. Supp. 3d at 1235; *Apache Stronghold*, 782 F. Supp. 3d at 769-70; *Protect Our Water*, 377 F. Supp. 2d at 884. No case cited by Defendants suggests otherwise. [2]

### B. Robinhood Has Demonstrated a Likelihood of Irreparable Harm

Defendants do not dispute that if Robinhood is precluded from offering new sports-related event contracts during the pendency of appeal, it will lose money that it can never recover from the State of Nevada because of sovereign immunity. That is irreparable harm. (Motion at 10-11.)[3]

---

[2] Robinhood maintains that it is likely to succeed on the merits, but the Court need not reach that issue to grant an injunction pending appeal under the "serious questions" standard.

[3] The assumption that Robinhood could geofence Nevada to *limit* its lost revenue changes nothing. (Opposition at 15.) The point is that the lost *Nevada* revenue is unrecoverable and

5

1 Defendants also do not dispute that if Robinhood were to face an enforcement action in Nevada while the appeal plays out, that would also constitute irreparable harm as a matter of law. (*Id.* at 10.) Because Defendants cannot contest the presence of at least these two forms of irreparable harm, this factor also strongly weighs in favor of an injunction pending appeal.

Defendants' primary argument on irreparable harm is that *if* they are right that the CEA does not preempt state law, then Robinhood will not suffer harm. Their other argument is a version of blaming Robinhood for putting itself in the position to face enforcement actions and lose goodwill by unwinding existing contracts. Neither argument has merit.

*First,* Nevada's argument that Robinhood cannot be irreparably harmed by complying with the law assumes that Nevada will win on the merits. But there is an entirely different element that addresses the question of who will win, and this Court already determined that there are at least serious questions as to whether Nevada law is preempted. Defendants' formulation of the standard would mean that whichever party was more likely to succeed on the merits would *always* prevail on irreparable harm, because that party could always say that the counterparty merely had to comply with the law. That is not the standard, and a party may be entitled to an injunction pending appeal *even where*, unlike here, it is *unlikely* to prevail on the merits. *See, e.g.*, *Conservation Cong.*, 803 F. Supp. 2d at 1134 (finding that the plaintiffs had not raised a serious legal question, but granting limited injunction); *Seneca Nation,* 2010 WL 4027795, at *3 (finding that the plaintiffs were entitled to an injunction pending appeal in view of irreparable harm, though they "failed to demonstrate a substantial possibility of success on appeal"). Here, Robinhood has raised at least serious questions on the merits as to whether state law is preempted. As another court in the Ninth Circuit has explained, "if an individual or entity faces the imminent threat of enforcement of a preempted state law and the resulting injury may not be remedied by monetary damages, the individual or entity is likely to suffer irreparable harm." *United States v. Arizona*, 703 F. Supp. 2d

---

therefore irreparable. It is also of no moment that Robinhood could still offer event contracts elsewhere, just as it is irrelevant that Crypto.com decided to leave Nevada pending appeal. (*Id.*) The fact that another company decided to accept its own irreparable harm rather than seek an injunction does not make Robinhood's harm any less irreparable.

6

1    980, 1006 (D. Ariz. 2010), *injunction terminated by United States v. Arizona*, No. 10-CV-01413-
2    PHX-SRB, 2012 WL 4076192 (D. Ariz. Sept. 18, 2012).

3    The cases Defendants cite for the proposition that courts will not use their equitable powers
4    to further illegal conduct are inapposite. (Opposition at 12-13.) *Original Investors, LLC v.*
5    *Oklahoma*, 542 F. Supp. 3d 1230 (W.D. Okla. 2021), involved a decision on a motion to dismiss
6    and never discussed irreparable harm. The issue there was whether the plaintiff could seek an
7    injunction in federal court to permit it to sell marijuana in Oklahoma, even though selling
8    marijuana remained unambiguously unlawful under federal statutes. *Id.* at 1231. *United States v.*
9    *City of Los Angeles*, 595 F.2d 1386 (9th Cir. 1979), involved a claim of irreparable harm from the
10   suspension of federal funding during the pendency of civil rights action by the United States
11   against the Los Angeles Police Department. The Court found that this harm could not be
12   irreparable because Congress had explicitly required immediate suspension of funding upon the
13   filing of a civil rights suit, *id.* at 1391, something not implicated here. *John Doe Co. v. CFPB*, 235
14   F. Supp. 3d 194 (D.C. Cir. 2017), is also irrelevant. There, the plaintiff sought an injunction to
15   prohibit the CFPB from conducting an investigation that could—but not necessarily would—be
16   the precursor to enforcement proceedings. The court found a lack of irreparable harm because
17   participating in the investigation would not itself cause material harm, and any harm that could be
18   caused by a subsequent enforcement proceeding could be addressed in future litigation. *Id.* at
19   202-03. That is not the situation here, where the threat is an enforcement action, not an
20   investigation, and the harm from the unrecoverable lost revenue is immediate and certain.

21   *Second*, Defendants' suggestion that Robinhood's irreparable injury should be discounted
22   because Robinhood could have chosen not to offer sports-related event contracts in Nevada is
23   without merit. The primary case cited by Nevada for the proposition that "self-inflicted" harm
24   undermines a claim of irreparable harm is *Bennett v. Isagenix International LLC*, 118 F.4th 1120
25   (9th Cir. 2024). That case is irrelevant. There, the Ninth Circuit held that a party that has
26   contractually waived its right to recover certain damages under law cannot ask the court to prevent
27   such damages from arising via an injunction by pointing out that they cannot later recover the
28   waived damages. *Id.* at 1129-30. That has nothing to do with the facts presented here, where the

7

reason that Robinhood cannot later recover damages is sovereign immunity, not a contractual, "self-inflicted" waiver. No case cited by Defendants even suggests that the harm Robinhood will face absent an injunction pending appeal—lost revenue that cannot be recovered from the State and the harm from a potential enforcement proceeding—is anything other than irreparable simply because Robinhood could have decided not to offer sports-related event contracts in Nevada.

To the extent Robinhood's decision to enter the Nevada market is relevant at all, it is relevant to the balance of hardships rather than to discount the actual harm Robinhood will suffer absent an injunction pending appeal. And, as discussed further below, Robinhood did not blindly decide to proceed with sports-related event contracts in Nevada based on its own view of federal law. To the contrary, after receiving a cease and desist letter and temporarily suspending trading, Robinhood restarted its offering of sports-related event contracts in Nevada <u>only</u> after: (1) this Court's initial ruling that Nevada law was likely preempted in the *Kalshi* case; (2) entry of a preliminary injunction against Defendants based on that first ruling; and (3) Nevada's decision not to appeal that injunction.[4]

In sum, the undisputed facts establish as a matter of law that Robinhood will suffer irreparable harm absent an injunction pending appeal. It can never get back the money it will lose by suspending trading of sports-related event contracts, and it can never get back what it would lose if the state began enforcement proceedings. Robinhood has thus established that at least two of the elements of the relevant standard favor an injunction pending appeal.[5]

---

[4] This also dispenses with the argument that Robinhood delayed seeking injunctive relief. (Opposition at 14.) Robinhood took a considered approach to reentering the market based on the developments in the *Kalshi* litigation after the Court enjoined Nevada and after Nevada decided not to appeal that injunction. But once it entered, it immediately sought relief. As Defendants themselves acknowledge, Robinhood moved for preliminary injunctive relief within 24 hours of offering sports-related event contracts in Nevada—Robinhood began offering event contracts on August 18, 2025, and filed the Complaint and Motion for Preliminary Injunction the next day. (Complaint (Docket No. 1); Motion for Preliminary Injunction (Docket No. 7).)

[5] Defendants also argue that Robinhood customers are to blame for their own harms because of warnings they received about ongoing litigation. (Opposition at 14.) Defendants do not respond with specificity to the argument and law Robinhood presented on this issue in the Motion. Regardless of any litigation warnings, these customers are not moving for an injunction—Robinhood is. Whatever notice a customer may have received changes nothing about the irreparable harm *Robinhood* will suffer, including the unrecoverable lost revenue. These customers' constructive notice of litigation is also not a reason to discount their harm,

### C. The Balance of Equities Tips Sharply in Robinhood's Favor

Robinhood has demonstrated that the equities tip sharply in its favor.

*First*, Defendants fail to address the central problem with their argument that the equities favor them, which is that they never appealed the Kalshi preliminary injunction. Robinhood is in the position to now have to reverse course and pull out of Nevada pending appeal—even though the Court acknowledges that there are serious questions on the merits—because it relied in good faith on this Court's original ruling in the *Kalshi* case that Nevada chose not to appeal. To be sure, Robinhood understood that was a preliminary ruling. But Nevada also understood that, if the parade of horribles it now cites if an injunction is in place pending appeal exists, that parade of horribles also existed during the months and months that it left this Court's original injunction unchallenged. It blinks at reality for Nevada to now argue that the state will face fundamental, irreparable harm if an injunction remains in place for a minute longer when it decided—unlike New Jersey, which immediately appealed a district court injunction—to allow the *Kalshi* litigation to continue to play out at the district court level with a preliminary injunction in place. Defendants have no answer to this point because there is none.

*Second*, balancing the equities also requires examining the good faith nature of the conduct at issue. *Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.*, No. CV 13-05504-SJO (MANx), 2013 WL 12131744, at *6 (C.D. Cal. Aug. 13, 2013) (factoring the parties' actions in good faith into the balancing of the equities). Here, while Robinhood has a genuine disagreement with Nevada about the preemption question, it has at all times proceeded reasonably and in good faith. Robinhood ceased offering sports-related event contracts after the State first sent its cease and desist letter and refused to extend the deadline. (Complaint ¶ 44.) Robinhood proposed to Nevada back in May—shortly after the Court's initial injunction ruling in the *Kalshi* case—that Nevada agree to allow Robinhood to reenter the market without fear of an enforcement proceeding while the *Kalshi* injunction was in place. (*Id.* ¶ 45.) Robinhood waited months for a formal response,

---

particularly because a Nevada customer constructively aware of the Robinhood litigation would also have been aware of the preliminary injunction granted to Kalshi. *Bowles v. Russell*, 551 U.S. 205, 220 n.7 (2007) (Souter, J., dissenting) ("As a member of the Federal Judiciary, I cannot help but think that reliance on our orders is reasonable.").

and only filed suit when it was clear that the State would not agree to be bound by this Court's decision in the *Kalshi* litigation with respect to Robinhood. (*See id.* (filed August 19, 2025).)

To be sure, the Court changed its view of the preemption issues. But it has also acknowledged that these cases present complex, novel issues that need appellate review. Having initially decided that state law is preempted—a decision Robinhood relied on—basic principles of fairness support maintaining that status quo pending the outcome of the appeals. *Cf. Planned Parenthood Monte Mar, Inc. v. Ford*, No. 3:85-cv-00331-ART-CSD, 2025 WL 1210968, at *6 (D. Nev. Apr. 25, 2025) (finding that the relevant "status quo" for granting an administrative stay was during the time an injunction was in place which was later vacated by the court).

*Third*, while Nevada argues that it has a "public interest in the enforcement of its laws," (Opposition at 15), Robinhood has at least raised serious questions as to whether Nevada may have ***any*** interest in the enforcement of these laws as a result of preemption. There is thus a reasonable likelihood that Nevada's alleged harm is not cognizable at all because federal law and policy supplants the interest of the state in this instance. *Champion Int'l Corp. v. Brown*, 731 F.2d 1406, 1409 (9th Cir. 1984) ("Montana has no cognizable state interest in enforcing those age discrimination laws that are preempted by federal law.").

*Fourth,* Defendants make several arguments about the importance of gaming to Nevada. (Opposition at 15-17; Joinder at 4-8.) Many of these arguments flow from the same flawed factual premise—that granting a time-limited injunction allowing sports-related event contract transactions on a DCM, while this case is pending appeal, would somehow be the undoing of the gaming industry in Nevada by preventing the regulation of any gaming in Nevada. But nothing would stop the Board from regulating gaming in Nevada during the pendency of Robinhood's appeal, just as they did after Kalshi's preliminary injunction was granted. The scope of the injunction sought is only for transactions that occur on a DCM. Defendants thus would remain free to enforce Nevada law against unlicensed gaming outside of DCMs.

Defendants also argue that if gaming companies must be licensed, it is sensible that Robinhood should be licensed. This argument goes to the merits, and not to the balance of harms. It is also incorrect. As Robinhood has explained throughout this litigation, there are material

10

differences between sports bets and event contracts. (Complaint ¶ 39.) For example, sportsbooks act as a house, setting odds and lines and taking a percentage of every bet, whereas event contracts operate as a bilateral contract between two participants—a buyer and a seller. There is no house. It is sensible that this type of product would be regulated differently from sportsbooks.

Moreover, despite Defendants' exaggerated claims, there is no evidence in the record that Robinhood's event contract business has had any effect whatsoever on the gaming industry in Nevada. To the contrary, the only available record evidence is that casino revenue *rose* in August, September, and October while Robinhood was offering sports-related event contracts in Nevada. (Motion at 14.)[6] While the NRA attacks these metrics, they provide no contrary indication of any revenue they may have lost, rendering their claimed harms completely speculative.

Finally, the one potential impact on the State of Nevada that was discussed at length during the hearing on the motion for a preliminary injunction was the Court's question about how its initial ruling may have impacted the licensing application processes for FanDuel and DraftKings. This issue also featured prominently in the Court's analysis of why, in its estimation, the public interest did not favor an injunction in the *Kalshi* matter. *KalshiEx, LLC v. Hendrick*, No. 2:25-cv-00575-APG-BNW, 2025 WL 3286282, at *14 (D. Nev. Nov. 24, 2025). However, at the time of that ruling, there was little, if any, evidence in the record about the circumstances that led to the withdrawal of those licensing applications. Robinhood provided the missing context for those decisions in its opening brief on this Motion, demonstrating that those withdrawals were caused by the clear overreach of Nevada in trying to interfere with sports-related event contract trading nationwide. (Motion at 15-17.) Neither Defendants nor the NRA even attempt to respond to Robinhood's points about DraftKings and FanDuel in opposition. Their complete silence on the facts concerning the DraftKings and FanDuel events—events that clearly motivated the Court's initial decision on the preliminary injunction—is deafening. By failing even to respond or mention these two entities at all, Defendants and the NRA concede that those events do not bear on their claim that the equities weigh against an injunction.

---

[6] *See also* Nevada Gaming Control Board, Monthly Revenue Report (Oct. 2025), *available at* https://www.gaming.nv.gov/siteassets/content/about/gaming-revenue/2025oct-gri.pdf.

11

In sum, in the order denying Robinhood's motion for a preliminary injunction, the Court found that the gaming industry's centrality to Nevada's economy and Robinhood's alleged effect on that industry meant the public interest weighed against granting a preliminary injunction. In light of Robinhood's uncontroverted evidence of the industry's continued success and the uncontroverted account of DraftKings's and FanDuel's decisions not to seek licensure in the State, Defendants have no room to argue that the public interest weighs against a more limited injunction pending appeal, especially under the more flexible standard applicable to such motions.

## III. THE SECURITY DEFENDANTS SEEK IS EXCESSIVE

Defendants argue for a bond in the amount of $500,000. (Opposition at 17.) That represents the maximum administrative fine they claim can be imposed against Robinhood (*id.*) and is fifty times the $10,000 bond the Court ordered in the *Kalshi* case. This amount is excessive and unjustified because it does not in any way measure the amount "proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." *Pacito v. Trump*, 772 F. Supp. 3d 1204, 1227 (W.D. Wash. 2025) (quoting Fed. R. Civ. P. 65(c)). The Court should reject this overreach and require nothing more than $10,000. (Motion at 19.)

## IV. DEFENDANTS WAIVED ANY OPPOSITION TO ROBINHOOD'S REQUEST FOR ALTERNATIVE RELIEF

Robinhood also requested a more limited, three-week injunction to give it time to seek an injunction pending appeal from the Ninth Circuit if the Court declines to grant the broader relief. (Motion at 19.) Defendants do not address this in opposition. They have therefore waived any argument that this limited relief would be inappropriate. While Robinhood believes the Court should grant Robinhood a full injunction pending appeal, if the Court disagrees it nonetheless should grant this more limited, unopposed request.

## CONCLUSION

For the reasons set forth above, the Court should grant Robinhood's motion for an injunction pending appeal. In the alternative, the Court should grant an interim injunction preserving the status quo while Robinhood seeks relief from the Ninth Circuit.

12

DATED this 12th day of December, 2025.

                                PISANELLI BICE PLLC

                        By:   */s/ Todd L. Bice*
                              Todd L. Bice, Esq., Bar No. 4534
                              400 South 7th Street, Suite 300
                              Las Vegas, Nevada 89101

                              Kevin J. Orsini, Esq.
                              (*pro hac vice*)
                              Antony L. Ryan, Esq.
                              (*pro hac vice*)
                              Brittany L. Sukiennik, Esq.
                              (*pro hac vice*)
                              CRAVATH, SWAINE & MOORE LLP
                              375 Ninth Avenue
                              New York, New York 10001

                        *Counsel for Plaintiff*
                        *Robinhood Derivatives, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Pisanelli Bice PLLC, and that on December 12, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Yalonda Dekle*
An employee of Pisanelli Bice PLLC
